JUDGE FRANK MONTALVO

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION



| | |
|---|---|
| **ERIK SALAIZ,** | § |
| | § |
| | § |
| **Plaintiff,** | § |
| | § |
| **v.** | § |
| | § |
| **PELICAN INVESTMENT HOLDINGS GROUP** | § |
| **LLC,** d/b/a **AAP** a Delaware Limited Liability | § |
| Company, **DIMENSION SERVICE** | § |
| **CORPORATION, INC** a Ohio Corporation and | § |
| **GUS RENNY** aka **GUSTAV RENNY** | § |
| **Defendants.** | § |
| | § |

**EP22CV0029**

## PARTIES

1. Plaintiff ERIK SALAIZ ("Plaintiff") is a natural person and is a citizen of the Western District of Texas and was present in Texas for all calls, in this case in El Paso County.

2. Defendant PELICAN INVESTMENT HOLDINGS GROUP d/b/a AAP ("AAP") is a Limited Liability Company organized and existing under the laws of Delaware with a principal address at 1300 N Congress Avenue West Palm Beach, Florida 33409 and can be served via registered agent Scott J Wortman 12300 South Shore Boulevard, Suite 202 Wellington, Florida 33414.

3. Defendant DIMENSION SERVICE CORPORATION, INC ("DIMENSION") is a Corporation organized and existing under the laws of Ohio and can be served via registered agent Corporation Service Company 50 West Broad Street, Suite 1330, Columbus, Ohio 43215.

4. Defendant GUS RENNY aka GUSTAV RENNY ("RENNY") is a natural person, and Chief Executive Officer of AAP and can be served at 1300 Old Congress Road, West Palm Beach, Florida 33409.

5. Defendants all together ("Defendants") to stop placing calls to Plaintiff's personal cell phone and to obtain redress as authorized by statute.

## JURISDICTION AND VENUE

6. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal stature.

7. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

8. This Court has personal jurisdiction over Defendants because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

9. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants regularly conducts business in the state of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

2

10. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

12. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

13. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

14. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

15. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

16. According to findings of the FCC, the agency vested by Congress with authority to issue
    regulations implementing the TCPA, automated or prerecorded telephone calls are a
    greater nuisance and invasion of privacy than live solicitation calls and can be costly and
    inconvenient.

17. The FCC also recognizes that "wireless customers are charged for incoming calls whether
    they pay in advance or after the minutes are used." *In re Rules and Regulations
    Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165
    (2003).

18. The FCC requires "prior express written consent" for all autodialed or prerecorded
    telemarketing robocalls to wireless numbers and residential lines.  In particular:[A]
    consumer's written consent to receive telemarketing robocalls must be signed and be
    sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of
    the consequences of providing the requested consent, *i.e.*, that the consumer will receive
    future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2)
    having received this information, agrees unambiguously to receive such calls at a
    telephone number the consumer designates. In addition, the written agreement must be
    obtained without requiring, directly or indirectly, that the agreement be executed as a
    condition of purchasing any good or service.

19. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted).
    FCC regulations "generally establish that the party on whose behalf a solicitation is made
    bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations
    Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13

4

(1995).

20. The FCC confirmed this principle in 2013, when it explained that "a seller ...may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

21. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

22. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## NATURE OF ACTION

23. Defendants offer services to businesses and consumers. As part of marketing their products and services, Defendants and their agents placed illegal robocalls to Plaintiff's

5

cell phones that used an automated telephone dialing system ("ATDS") and an artificial or prerecorded voice message.

24. Defendant AAP make unsolicited and unauthorized phone calls to consumers using false and misleading statements and artificial or prerecorded voice messages to sell vehicle service contracts (VSCs).

25. Defendant AAP did not obtain prior express written consent from Plaintiff prior to calling his personal cell phones, and Defendant AAP is therefore liable under the Telephone Consumer Protection Act 47 U.S.C. § 227 (the "TCPA") and its implementing regulation, 47 C.F.R. § 64.1200(a)(2).

26. The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendants' use of technological equipment to spam consumers on a grand scale without their consent.

27. By placing the calls at issue, Defendants have violated the privacy of Plaintiff and caused him to suffer damages that are recognized by statute.

28. Plaintiff therefore seeks an injunction requiring all Defendants to cease any authorization for allowing unknown telemarketers to call his personal cell phones as well as an award of actual and statutory damages, civil penalties, costs and reasonable attorneys' fees.

## FACTUAL ALLEGATIONS

29. Plaintiff's personal cell phones (915) 540-5210 and (915) 490-0898 are on the National Do-Not-Call-Registry.

30. Plaintiff has never had any relationship with Defendants and never gave them his prior express written consent to receive the unauthorized robocalls alleged in this case.

6

31. Each of the calls alleged in this case Defendants made to Plaintiffs personal cell phones all started with the same artificial or prerecorded voice message in English or Spanish.

32. Defendants AAP and Renny authorize and approve of the scripts used when their telemarketers or agents make illegal robocalls to consumers en mass that start with an artificial or prerecorded voice message in both English or Spanish that say

"Hi, I'm giving you a call from the dealer service center we recently noticed you cars extended warranty was going to expire and wanted to give you one last courtesy call before your warranty expires and your coverage is voided. This would make you responsible for all service repairs. Press one now if you wish to extend or reinstate your cars warranty."

33. The pre-recorded or artificial message did not provide "the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted." 47 C.F.R 64.1200(d)(4);

34. On August 30, 2021 Plaintiff received a call to his personal cell phone (915) 540-5210 from Defendant AAP from phone number (203) 749-8683.

35. Plaintiff answered and heard an artificial or prerecorded voice message that stated "hi, I'm giving you a call from the dealer service center we recently noticed your cars extended warranty was going to expire" and "press one now if you wish to extend or reinstate your cars warranty."

36. Plaintiff was then transferred to a representative named Nate who solicited Plaintiff for a VSC on behalf of Defendants.

37. Plaintiff purchased a VSC from Defendants for the sole purposes of identifying all parties responsible for the illegal robocalls.

7

38. On November 18, 2021 Plaintiff received a call to his personal cell phone (915) 540-5210 from Defendant AAP from phone number (703) 644-9364.

39. Plaintiff answered and heard an artificial or prerecorded voice message in Spanish that stated "hi, I'm giving you a call from the dealer service center we recently noticed your cars extended warranty was going to expire" and "press one now if you wish to extend or reinstate your cars warranty."

40. Plaintiff pressed one and got transferred to a representative named Monica that stated she was with the warranty division and solicited Plaintiff for a VSC on behalf of Defendants.

41. Monica then transferred Plaintiff to a "senior coverage specialist" named Joe that went over the terms and solicited Plaintiff for a VSC on behalf of Defendants.

42. Joe then transferred Plaintiff to the "finance manager" named Jasmin who covered the cost of the VSC and collected Plaintiff's credit card information.

43. Plaintiff purchased a VSC from Defendants for the sole purposes of identifying all parties responsible for the illegal robocalls.

44. On November 23, 2021 Plaintiff received a call to his personal cell phone (915) 540-5210 from Defendant AAP from phone number (715) 824-5991.

45. Plaintiff answered and heard an artificial or prerecorded voice message in Spanish that stated "hi, I'm giving you a call from the dealer service center we recently noticed your cars extended warranty was going to expire" and "press one now if you wish to extend or reinstate your cars warranty."

46. Plaintiff pressed one and got transferred to a female representative that stated she was with the warranty division and solicited Plaintiff for a VSC on behalf of Defendants.

47. The female representative then transferred Plaintiff to a "senior coverage specialist" named Cynthia that went over the terms and solicited Plaintiff for a VSC on behalf of Defendants.

48. Cynthia then transferred Plaintiff to another "specialist" named Cesar who covered the cost of the VSC and collected Plaintiff's credit card information.

49. Plaintiff purchased a VSC from Defendants for the sole purposes of identifying all parties responsible for the illegal robocalls.

50. On December 8, 2021 Plaintiff received a call to his personal cell phone (915) 490-0898 from Defendant AAP from phone number (703) 644-9364.

51. Plaintiff answered and heard an artificial or prerecorded voice message that stated "hi, I'm giving you a call from the dealer service center we recently noticed your cars extended warranty was going to expire" and "press one now if you wish to extend or reinstate your cars warranty."

52. Plaintiff pressed one and got transferred to a representative named Charles that stated he was with the warranty division and solicited Plaintiff for a VSC on behalf of Defendants.

53. Charles then transferred Plaintiff to a "senior coverage specialist" named JT that went over the terms and solicited Plaintiff for a VSC on behalf of Defendants.

54. JT then transferred Plaintiff to the "finance manager" named Elizabeth who covered the cost of the VSC and collected Plaintiff's credit card information.

55. Plaintiff purchased a VSC from Defendants for the sole purposes of identifying all parties responsible for the illegal robocalls.

56. On January 7, 2022 Plaintiff received a call to his personal cell phone (915) 490-0898 from Defendant AAP from phone number (708) 474-6629.

57. Plaintiff answered and heard an artificial or prerecorded voice message that stated "hi, I'm giving you a call from the dealer service center we recently noticed your cars extended warranty was going to expire" and "press one now if you wish to extend or reinstate your cars warranty."

58. Plaintiff pressed one and got transferred to a female representative named that stated she was with the warranty division and solicited Plaintiff for a VSC on behalf of Defendants.

59. The female representative then transferred Plaintiff to a "Nissan specialist" named Melissa that went over the terms and cost of the VSC with Plaintiff and collected his credit card information.

60. Melissa then transferred Plaintiff to a representative named Kimberly that stated she was with the "verification department" and needed to verify his information and process the payment to his credit card.

61. Plaintiff purchased a VSC from Defendants for the sole purposes of identifying all parties responsible for the illegal robocalls.

62. Each payment transaction made to Plaintiffs credit card from Defendants merchant account displayed on his statement as AAP 888-678-0697.

63. Each VSC policy Plaintiff received via USPS from Defendants lists AAP as the seller and Dimension as the Administrator. AAP is also listed as another Administrator.

64. The Defendants representatives are all trained not to release the company's name, address, or phone number until a consumer purchases their VSC in order to hide their true identity.

65. Defendant Renny is a serial TCPA violator that has either owned or managed multiple different Auto Warranty Protection business that have all been sued for violating the TCPA.

66. Defendants Renny, and AAP have been sued multiple times as co-defendants.  Cases include 2:2021-CV-03803-EAS-CMV (June 25, 2021), 2:2021-CV-02444-ALM-EPD (April 12, 2021) and 1:21-CV-04663 (August 31, 2021).

67. On February 19, 2021, Defendant Renny signed the fictitious name registration with the Florida Secretary of State for Defendant Pelican Investment Holdings Group, LLC  to register the name "AAP."  This registration required Renny to sign section 3 as an officer of Pelican Investment Holdings Group, LLC.  Renny signed his name, listed his phone number ending in 7114, and listed his email address of gusrenny@me.com.  Section 3 states:

"I, the undersigned, being an owner in the above fictitious name, certify that the information indicated on this form is true and accurate.  In accordance with Section 865.09, F.S., I further certify that the fictitious name to be registered has been registered at least once in a newspaper as defined in Chapter 50, Florida Statutes, in the county where the principal place of business is located.  I understand that the signature below shall have the same legal effect as if made under oath and I am aware that false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155. F.S.

68. Defendant Renny knowing and willfully authorizes unknown telemarketers to place illegal robocalls as the ones alleged in this case to millions of consumers en mass by using an ATDS.

69. AAP website is https://www.useaap.com and is registered to GR Investment Group, LLC.

70. Defendant Renny is the registered agent and Manager of GR Investment Group, LLC.

| Date | Time | Caller ID |
|------|------|-----------|
| 8/30/2021 | 9:11AM | 203-749-8683 |
| 11/18/2021 | 8:39AM | 703-644-9364 |
| Table A: 11/23/2021 | 2:41PM | 715-824-5991 |

| Date | Time | Caller ID |
|------|------|-----------|
| 12/8/2021 | 8:17AM | 978-263-0880 |
| Table B: 1/7/2022 | 10:25AM | 708-474-6629 |

82. Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

83. Defendants and their agents and co-conspirators amassed lists of thousands of vehicle owners from public records, vehicle sales and registration records, and data aggregators and then sent phone calls using artificial or prerecorded voice messages *en masse* to market their VSCs.

84. None of the Defendants registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations. The https://direct.sos.state.tx.us/telephonesearch.asp site ("Texas Registration Database") does not contain any of the Defendants registrations.

85. The telephone numbers in Table A and B from which Plaintiff was called do not appear in the Texas Registration Database.

86. None of the Defendants qualify for an exemption under § 302.053.

87. No emergency necessitated none of the alleged illegal robocalls.

88. The Defendants never sent Mr. Salaiz any do-not-call policy.  Plaintiff sent an internal do-not-call policy request to support@useaap.com and gus@gusrenny.com.

89. On information and belief, the Defendants did not have a written do-not-call policy while

13

they were sending Mr. Salaiz the unsolicited calls.

90. On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

91. Defendants participated in, facilitated, directed, authorized, knew of or willfully ignored the false and misleading sales practices and unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

92. Defendants have knowledge of and have adopted and maintained TCPA violations as a sales strategy. This is amply supported by the complaints Defendants receive that are available from the Better Business Bureau ("BBB"). The full scale of the complaints Defendants receive is not currently available to Plaintiffs but will be revealed through discovery to amplify what is shown below.

93. Defendants refuse to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendants.

94. Plaintiff never consented to receive the calls alleged herein. Plaintiffs had no relationship with Defendants prior to the calls alleged herein.

95. Defendants advertised their products by falsely informing the consumer that their warranty had expired and that Defendants' product would "extend" the original auto manufacturer's warranty coverage. The VSCs are not auto warranty extensions and do not provide auto warranty coverage. The VSCs are also with parties other than the original manufacturer of the vehicle and warrantors.

14

## VICARIOUS LIABILITY

96. Defendants are vicariously liable under the theories of actual authority, apparent authority, and ratification, and as well as liable because any other result would impair the underlying purpose of the TCPA.

97. Defendant AAP is the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain the Plaintiff as a client when they solicited him for a VSC.

98. Defendant Renny authorized third party telemarketers to generate prospective customers.

99. Defendant Dimension is aware of Defendants AAP and Renny TCPA violations and ratifies the behavior because Defendant Dimension benefits from it financially.

## COMMON ENTERPRISE

100.        Defendants AAP and Dimension collectively "Corporate Defendants," and Renny have operated as a common enterprise while engaging in the deceptive acts and practices and other violations of law alleged herein.  Defendants have conducted the business practices herein through an interrelated network of companies that have common ownership or officers, business functions, employees, office locations, and that have commingled funds.  Because these Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged herein.  Defendant Renny has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendants AAP and Dimension that constitutes the common enterprise.

## DEFENDANT RENNY IS PERSONALLY LIABLE

15

101.     Defendant Renny refuses to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendant Renny financially.

102.     "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

103.     The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct....or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

104.     Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.

> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal

involvement in and ultimate control over every aspect of Blastfax's wrongful contuct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is fare more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

105.     The Same Court held that corporate officers were also personally liable for DTPA violations

The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct.....For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation......Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

106.     At all times material to the Complaint, acting alone or in concert with others,

Defendant Renny has formulated, directed, controlled, had the authority to control, or

participated in the acts and practices of Defendant AAP including the acts or practices set

forth in this Complaint.

107.     Defendant Renny is the principal director and operator of Defendant AAP

controls the day-to-day operations of AAP and directed their employees, agents,

salespersons, and solicitors to make TCPA violating phone calls and to solicit "VSCs."

And "car warranties."

17

108.     Defendant Renny approved the telemarketing scripts, signed the contracts, paid commissions for the illegal behavior, and directed the illegal calls to be made for his financial benefit.

109.     Defendant Renny knowingly and willfully ignores the law. He continues to solicit car warranties via automated messages with prerecorded voice messages. These violations are the direct result of the instructions Defendant Renny has given to his agents, employees, solicitors, salespersons, and others that carry out his schemes.

110.     Defendant Renny is not merely a bystander. His is the mastermind that scheme, planned, directed, initiated, and controlled the illegal and fraudulent behavior.

111.     Defendant Renny is well aware his conduct violated the TCPA and Tex. DPTA and refused to alter their behavior. Defendant Renny is the sole director AAP and the only person with the power to make the unlawful, fraudulent, and unethical behavior stop. Yet, Renny has taken no steps to stop the behavior because the behavior benefits Renny financially. Defendant Renny breaks the law with his eyes and pocketbooks wide open.

112.     Defendants Renny, AAP, and Dimension should be held jointly and severally liable for both the TCPA violations and Tex. Bus. Com. Code 302.101 via the Tex. DTPA because they actually committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct.

113.     Defendant Renny should be held liable because to do otherwise would simply allow him to dissolve AAP and set up a new corporation and repeat their conduct like he has in the past. This would result in both the TCPA and DTPA being unenforceable.

**The Texas Business and Commerce Code 305.053**

114.    The Texas Business and Commerce code has an analogous portion that is related
to the TCPA and was violated in this case.

115.    The Plaintiff may seek damages under this Texas law for violations of 47 USC
227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing
damages.

**Violations of the Texas Business and Commerce Code § 302.101**

116.    The actions of the defendants violated the Texas Business and Commerce Code
302.101 by placing solicitation phone calls to a Texas resident without having
registration certificate and bond on file with the Texas Secretary of State.

117.    Texas Business and Commerce Code § 302.101 provides a private right of action.
A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under
Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or
remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302."
Tex. Bus. & Com. Code § 302.303.

118.    The use or employment by any person of a false, misleading, or deceptive act or
practice" causes "economic damages or damages for mental anguish."  Tex. Bus. & Com.
Code § 17.50.

119.    Texas Business and Commerce Code §302.101 states that a person (1) "may not
make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser

19

located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

120.     Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

121.     Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing robocalls.

122.     Defendant's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

123.     Plaintiff has been annoyed, harassed, and irritated by robocalls placed by the Defendants and other similar companies.

124.     Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the Plaintiff.

## The Plaintiff's cell phones are residential numbers

125.     The calls were to the Plaintiff's cellular phones (915) 540-5210 and (915) 490-0898 which are Plaintiff's personal cell phones that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not

done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, watching movies, listening to music and sending and receiving text messages. The Plaintiff further has his cell phones registered in his personal name and pays the cell phones from his personal accounts.

## FIRST CAUSE OF ACTION

Willful and/or Knowing Violation of 47 U.S.C. § 227
Telephone Consumer Protection Act of 1991
(Against all Defendants)

126.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

127.     Defendants and/or their agents placed calls to Plaintiff's cellular telephone.

128.     Plaintiff never consented to receive calls from Defendants.  Plaintiff has no relationship with Defendants.

129.     Defendants' calls were made for purposes of advertising and marketing Defendants' VSCs.  These calls constituted commercial advertising and telemarketing as contemplated by the TCPA.

130.     The calls were made using an artificial or prerecorded voice message to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

131.     As a result of their unlawful conduct, Defendants repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their unlawful calling campaigns.

21

132.     Not only did Defendants make these violating calls, Defendants and/or their

agents did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

133.     If the Court finds that Defendants willfully or knowingly violated this subsection,

the Court may exercise its discretion to increase the amount of the award from $500 to

$1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## SECOND CAUSE OF ACTION
### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)
### (Against All Defendants)

134.     Plaintiff incorporates the forgoing allegations as if fully set forth herein.

135.     The foregoing acts and omissions of Defendants and/or their affiliates or agents

constitute multiple violations of FCC regulations by making telemarketing solicitations

despite lacking:

    a.   written policy, available upon demand, for maintaining a do-not-call list, in

        violation of 47 C.F.R. § 64.1200(d)(1)[2];

    b.   training for the individuals involved in the telemarketing on the existence of and

        use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

    c.   in the solicitations, the name of the individual caller and the name of the person or

        entity on whose behalf the call is being made, in violation of 47 C.F.R. §

        64.1200(d)(4).[4]

136.     Plaintiff is entitled to an award of at least $500 in damages for each such

violation. 47 U.S.C. § 227(c)(5)(B).

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

137.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing

or willful violation. 47 U.S.C. § 227(c)(5).

### THIRD CAUSE OF ACTION
### Violations of The Texas Business and Commerce Code 305.053

138.     Plaintiff incorporates the foregoing allegations as if set forth herein.

139.     The foregoing acts and omissions of Defendants and/or their affiliates or agents

constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by

making non-emergency telemarketing robocalls to Mr. Salaiz cellular telephone number

without his prior express written consent in violation of 47 USC 227 et seq. The

Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using

an ATDS that does not comply with the technical and procedural standards under this

subsection.

140.     Plaintiff is entitled to an award of at least $500 in damages for each such

violation. **Texas Business and Commerce Code 305.053(b)**

141.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing

or willful violation. **Texas Business and Commerce Code 305.053**(c)


### FOURTH CAUSE OF ACTION

### (Violations of The Texas Business and Commerce Code 302.101)

142.     Plaintiff incorporates the foregoing allegations as if set forth herein. by reference

each and every allegation set forth in the preceding paragraphs.

143.     The foregoing acts and omissions of Defendants and/or their affiliates or agents

constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by

23

making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

144.    Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302**.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendants jointly and severally as follows:

A.    Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.    A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.    An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.    An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for five calls.

E.    An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.    An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G.    An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

24

H.   An award to Mr. Salaiz of interest, costs and attorneys' fees, as allowed by law

and equity

I.   Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

January 19, 2022                   Respectfully Submitted,

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-540-5210
Salaiz.ep@gmail.com

25